Judith Pearce, SBN 100016
James Cai, SBN 200189
FORTUNE LAW GROUP LLP
100 Century Center Court, Suite 315
San Jose, California 95112
Telephone: (408) 436-0789
Facsimile: (408) 436-0758

Attorneys for Defendant and Counterclaimant
BARRY GOLDINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BORIS KANTEMIROV,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BARRY GOLDINE, d/b/a BIGWHEELS.NET, AND DOES 1-25,<br><br>　　　　Defendants. | Case No.: C-05-01362<br><br>Complaint Filed: March 2, 2005<br><br>**DEFENDANT'S FIRST AMENDED COUNTERCLAIMS**<br><br><br><br>**JURY TRIAL DEMANDED** |
| BARRY GOLDINE,<br><br>　　　　Counterclaimant,<br><br>v.<br><br>BORIS KANTEMIROV, SKIP LIGHTFOOT, AND DOES 1-25,<br><br>　　　　Cross-Defendants. | Judge: Hon. Howard R. Lloyd |

Defendant and Counterclaimant Barry Goldine ("Goldine"), in compliance with court order dated June 29, 2005, amends his counterclaims as follows:

## DEFENDANTS' COUNTERCLAIMS

## PARTIES

1. Cross Defendant Boris Kantemirov ("Kantemirov") is an individual residing in San Jose, California.

2. Cross Defendant Skip Lightfoot ("Lightfoot") is an individual residing in San Jose, California.

## STATEMENT OF FACTS

3. Defendant and Counterclaimant Goldine owns and operates a website with the domain name of www.bigwheels.net ("Bigwheels"), as part of his off-line business Adds Wheel Warehouse ("Adds Wheel").

4. Bigwheels sells wheels, tires and related accessories on-line.

5. Bigwheels incorporates Goldine's proprietary and copyrighted database (the "Database") which includes, but is not limited to, tens of thousands specifications for fitting different kinds of vehicles with oversized wheels and tires as accumulated and compiled by Goldine during his more than 20 years of industry experience.

6. On or about November 12, 2004, Defendant filed an application for copyright registration for the Database with the United States Copyright Office. Defendant received approval for such application on or about June 27, 2005, with November 12, 2004 as the effective date of registration.

7. The Database is Goldine's exclusive intellectual property and is crucial to Bigwheels' business.

8. In or about early 2002, Goldine engaged Cross Defendant Kantemirov as a website developer to enhance Bigwheels website and attract more traffic.

9. Kantemirov refused to sign any contract with Goldine and no definite term of employment was agreed.

10. Instead, the parties initially agreed that for Kantemirov's services, Kantemirov would receive commission in the amount of 50% of the adjusted gross profit generated by Bigwheels, i.e. the gross revenue less costs of business operation.

11. Upon Kantemirov's request for advance payment in order for him to raise enough money to bring his family from Russia to U.S., Goldine agreed to temporary withhold mark-up for the costs of goods that Adds Wheel supplied to Bigwheels.

12. The parties also agreed that any and all intellectual property developed by Kantemirov for Bigwheels was work-for-hire belonging solely to Goldine.

13. Goldine never referred Kantemirov as his partner in business.

14. In an attempt to control the sales and eventually the website of Bigwheels, Kantemirov, without authorization from Goldine, opened a credit card merchant account to receive payments from Bigwheel's on-line customers.

15. Upon discovery, Goldine promptly directed Kantemirov to switch the merchant account to Adds Wheel's account.

16. Kantemirov used a market ploy to pay for and receive a "Golden Web Award" from a marketing firm.

17. As the sales from Bigwheel website grew, Goldine had to hire a sales person, who was a close friend of Kantemirov, to handle customer phone calls, email inquiries and order processing.

18. The parties agreed that said sales person's salary was part of the overhead for Bigwheels.

19. In or about April 2003, Adds Wheel could no longer absorb the operation expenses and overhead related to Bigwheels' on-line business by not charging mark-up for the products that Adds Wheel supplied to Bigwheels. Goldine and Kantemirov agreed that Adds Wheel would receive $7.50 for the labor costs of mounting and balancing of each tire that was sold by Bigwheels.

20. Goldine has paid all expenses that Kantemirov submitted for reimbursement.

21. In or about September 2004, in yet another effort to clarify the rights and obligations of both parties, as well as to protect the confidential information of Bigwheels and its customers, Goldine prepared a Bigwheels.net Business Agreement and a Confidentiality Agreement for Kantemirov's signature, but Kantemirov declined to do so.

22. In an effort to extort more money from Goldine and force Adds Wheel to cover sales expenses and overhead of Bigwheels, Kantemirov threatened to shut down the servers of Bigwheels, which were under his possession and control.

23. Goldine, sick and tired of being held hostage, and no longer being able to afford to absorb the ever rising costs and expenses of Bigwheels, notified Kantemirov in an email in September 2004 that there would be a 15% mark-up for the tires, wheels and accessories that Adds Wheel would provide to Bigwheels.

24. Such mark-up was reflected in the calculation September 2004 commission for Kantemirov.

25. After receipt of his commission check, Kantemirov demanded that the mark-up be eliminated and no less than $3,500 semi-monthly should be paid to him, no matter how much sales the Bigwheels generated, or else he would shut down the servers for Bigwheels website.

26. Notwithstanding Kantemirov's extortion, Goldine repeatedly discussed in length and in good faith with Kantemirov that he was no longer able to afford Kantemirov's services if Kantemirov would not agree that Bigwheel had to reimburse Adds Wheel for the expenses related to the internet sales before Kantemirov's commission can be paid. Goldine even enlisted the help of a professional business consultant to explain the situation to Kantemirov, who was just completely adamant about his original demand.

27. While working for Bigwheels, Kantemirov, at the same time, began to solicit business from several competitors of Bigwheels, offering to provide them with confidential and proprietary information, including the Database, that he collected from Goldine and used by Bigwheels.

28. In January 2005, seeing no hope to work out a fair deal with Kantemirov and in fear of loss of invaluable intellectual property and customer confidential information, Goldine shut down Bigwheels website.

29. No commission was owed to Kantemirov.

30. Goldine contracted with another website developer to build a new website for Bigwheels from scratch using industry standard MySQL database program and Goldine's own proprietary Database, and re-launched the website shortly thereafter.

31. Kantemirov, on the other hand, misappropriated Goldine's proprietary Database and set up his own on-line wheels and tires websites, including, but not limited to, those under the domain names of www.Bigcustomwheels.com ("Bigcustomwheels"), www.Wheelsmaster.com ("Wheelsmaster") and www.Rims-N-Tire.com ("Rims-N-Tire") with Cross Defendant Lightfoot.

32. Goldine, through his attorney, sent cease-and-desist letter to Lightfoot on March 11, 2005 regarding the copyright infringement and the infringement has yet to stop.

## FIRST CAUSE OF ACTION

### Copyright Infringement

[Against Cross Defendants Kantemirov and Lightfoot]

33. Defendant and Counterclaimant Goldine re-alleges and incorporates all the allegations of this Answer and Counterclaim contained in paragraphs 1 through 32 above, as if fully stated herein.

34. At all times relevant hereto, Goldine has been and still is the owner and proprietor of all right, title and interest in and to the Database.

35. The Database contains materials wholly original with Goldine and is copyrightable subject matter under the copyright laws of the United States.

36. With full knowledge of Goldine's rights herein, Cross Defendants Kantemirov and Lightfoot have infringed and continue to infringe Goldine's copyrights by directly copying Database and incorporating the same to websites including, but not limited to, Bigcustomwheels, Wheelsmaster and Rims-N-Tire for public display, access, reproduce and distribution. Such copying was done by Cross Defendants without the consent, approval or license of Counterclaimant Goldine.

37. The aforementioned actions of Cross Defendants Kantemirov and Lightfoot violate Goldine's exclusive rights under §106 of the Copyright Act of 1976, 17 U.S.C. §106, and constitute infringement of Goldine's copyrights. Cross Defendant's past and continuing distribution, copying, public displaying, creating derivative works from the Database constitutes a willful and deliberate infringement of Goldine's copyrights and is causing irreparable harm and damage to Counterclaimant Goldine.

## SECOND CAUSE OF ACTION

<u>State Unfair Competition – Business and Professions Code § 17200 *et seq.*</u>

[Against Cross Defendants Kantemirov and Lightfoot]

38. Defendant and Counterclaimant Goldine re-alleges and incorporates all the allegations of this Answer and Counterclaim contained in paragraphs 1 through 37 above, as if fully stated herein.

39. The aforesaid acts of Cross Defendants Kantemirov and Lightfoot are and were willful and constitute unfair methods of competition and unfair or deceptive acts or practices in violation of Section 17200 of California Business and Professions Code.

## THIRD CAUSE OF ACTION

<u>Breach of Contract</u>

[Against Cross Defendant Kantemirov]

40. Defendant and Counterclaimant Goldine re-alleges and incorporates all the allegations of this Answer and Counterclaim contained in paragraphs 1 through 39 above, as if fully stated herein.

41. Goldine had agreement with Cross Defendant Kantemirov that Kantemirov will be paid commission for his work for the Bigwheels website in the amount of 50% of adjusted gross revenue of Bigwheels, which shall include deductions for the mark-up for the products provided

by Adds Wheel to Bigwheels and all other overhead and expenses of Bigwheels (collectively, "Deductions").

42. Goldine temporarily withheld the Deductions from the calculation of adjusted gross revenue due to Kantemirov's pleading for advance payments in order to raise money for bring his family from Russia to U.S.

43. After Kantemirov's family immigrated to U.S. and having been handsomely compensated for his work, Kantemirov refused to honor his promise to allow Goldine to take Deductions out of adjusted gross revenue of Bigwheels before paying Kantemirov his commission.

44. Kantemirov threatened to shut down the Bigwheels website if Deduction was to be taken out or if Kantemirov was to be paid less than $3,500 semi-monthly, $7,000.00 per month.

45. As a direct and proximate result of Kantemirov's breach of the agreement, Counterclaimant Goldine has suffered harm in an amount to be proven at trial.

FOURTH CAUSE OF ACTION

Misappropriation of Trade Secret – California Civil Code §3426 et seq.

[Against Cross Defendants Kantemirov and Lightfoot]

46. Counterclaimant herein incorporates paragraphs 1-45 as though fully set forth herein.

47. Goldine's Database is his trade secret since it comprises data, documents and information that are not generally known to be public or to other persons who can obtain economic value from its disclosure or use. Those data, documents and information are the subject of reasonable efforts by Goldine to maintain their secrecy, and they derive independent economic value from not being generally known. The data, documents and information comprising Goldine's trade secrets constitute "trade secrets" under California Civil Code §3426.1.

48. Cross Defendants Kantemirov and Lightfoot willfully and maliciously misappropriated Goldine's trade secret.

49. By reason of the above-alleged acts and conduct of Cross Defendants, Goldine has been damaged, and he will suffer great and irreparable harm and damage. The amount of this irreparable harm will be difficult to ascertain, and Goldine will be without an adequate remedy at law.

50. Goldine is entitled to an injunction restraining Cross Defendants, their employers, agents employees and, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Goldine's trade secrets, and restraining them from obtaining any commercial advantage or unjust enrichment from the misappropriation of Goldine's trade secrets.

51. Goldine is further entitled to an order requiring Cross Defendants, their employers, agents employees and, and all persons acting in concert with them, to return to Goldine any and all of his trade secrets and confidential, proprietary materials, including, but not limited to, the Database.

52. Goldine is further entitled to recover from Cross Defendants for the actual damages sustained by Goldine as a result of Cross Defendants' wrongful acts described in this Answer and Counterclaim. The amount of such damages cannot be determined precisely at this time.

53. Cross Defendants' acts of misappropriation were both willful and malicious, and Goldine is entitled to an award of punitive damages and attorney fees against Cross Defendants.

54. Goldine is further entitled to recover from Cross Defendants the gains, profits, advantages, and unjust enrichment that they have obtained as a result of their wrongful acts

described herein. Goldine is at present unable to ascertain the full extent of these gains, profits, advantages and unjust enrichment.

## FIFTH CAUSE OF ACTION

### Common Law Misappropriation

[Against Cross Defendants Kantemirov and Lightfoot]

55. Counterclaimant herein incorporates paragraphs 1-54 as though fully set forth herein.

56. Goldine owns the trade secret and proprietary information misappropriated by Cross Defendants. Goldine invested over 20 years of time and substantial amount of money in developing the Database and other confidential and proprietary information at issue in this Answer and Counterclaim. By misappropriating Goldine's intellectual property without authorization as described above, Cross Defendants have gained an illegal competitive advantage and allowed others to gain an illegal competitive advantage over Goldine. Cross Defendants misappropriated Goldine's trade secrets and confidential, proprietary information at little or no cost to themselves.

57. By reason of the above-alleged acts and conduct of Cross Defendants, Goldine has been damaged, and he will suffer great and irreparable harm and damage. The amount of this irreparable harm will be difficult to ascertain, and Goldine will be without an adequate remedy at law.

58. Goldine is entitled to an injunction restraining Cross Defendants, their employers, agents employees and, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Goldine's trade secrets or other confidential, proprietary information, and restraining them from obtaining any commercial advantage or unjust

enrichment from the misappropriation of Goldine's trade secrets, confidential and proprietary information.

59. Goldine is further entitled to recover from Cross Defendants for the actual damages sustained by Goldine as a result of Cross Defendants' wrongful acts described in this Answer and Counterclaim. The amount of such damages cannot be determined precisely at this time. Cross Defendants' acts of misappropriation were both willful and malicious, and Goldine is entitled to an award of punitive damages and attorney fees against Cross Defendants.

60. Goldine is further entitled to recover from Cross Defendants the gains, profits, advantages, and unjust enrichment that they have obtained as a result of their wrongful acts described herein. Goldine is at present unable to ascertain the full extent of these gains, profits, advantages and unjust enrichment.

### SIXTH CAUSE OF ACTION

Common Law Unfair Competition

[Against Cross Defendants Kantemirov and Lightfoot]

61. Counterclaimant herein incorporates paragraphs 1-60 as though fully set forth herein.

62. Goldine owns the trade secrets and proprietary information, including, but not limited to, the Database, misappropriated by Cross Defendants. Goldine invested substantial time and money in developing the confidential and proprietary information at issue in this Answer and Counterclaim. By misappropriating Goldine's intellectual property without authorization as described above, Cross Defendants misappropriated Goldine's trade secrets and confidential, proprietary information at little or no cost to themselves.

63. By reason of above-alleged acts and conduct of Cross Defendants, Goldine has suffered damages, and he will suffer great and irreparable harm and damage. This irreparable harm will be difficult to ascertain, and Goldine will be without an adequate remedy at law.

64. Goldine is entitled to an injunction restraining Cross Defendants as well as their employer, agents, employees, and all persons acting in concert with them, from using, copying, publishing, disclosing, transferring, or selling Goldine's trade secrets or other confidential, proprietary information, or any product that is based on or incorporates part or all of such material, and from obtaining any commercial advantage or unjust enrichment from their misappropriation of Goldine's confidential and proprietary information.

65. Goldine is further entitled to recover from Cross Defendants for the actual damages sustained by Goldine as a result of Cross Defendants' wrongful acts described in this Answer and Counterclaim. The amount of such damages cannot be determined precisely at this time. Cross Defendants' acts of misappropriation were both willful and malicious, and Goldine is entitled to an award of punitive damages and attorney fees against Cross Defendants. Goldine is further entitled to recover from Cross Defendants the gains, profits, advantages, and unjust enrichment that they have obtained as a result of their wrongful acts described herein. Goldine is at present unable to ascertain the full extent of these gains, profits, advantages and unjust enrichment.

### SEVENTH CAUSE OF ACTION

### Civil Conspiracy
[Against Cross Defendants Kantemirov and Lightfoot]

66. Defendant hereby incorporates by reference each and every allegation contained in Paragraph 1 through 65, inclusive, as if set forth in full herein.

67. While acting as agents of the other, acting in concert and for their mutual benefit, each and every Cross Defendant planned together and formed a conspiracy to undertake those actions as described above. Cross Defendants operated such conspiracy indeed.

68. Plaintiff has been damaged as a result of defendants' furtherance of this conspiracy in an amount to be proven at trial.

WHEREFORE, Defendant and Counterclaimant Goldine prays for judgment as follows:

1. That judgment be entered in favor of Defendant Goldine and that Plaintiff take nothing by his Complaint;
2. That Defendant Goldine be awarded his costs and attorney's fees incurred in the defense of this action;
3. That Defendant Goldine be awarded such other relief and the Court deems fair and just;
4. That Cross Defendants Kantemirov and Lightfoot be permanently enjoined from infringing Goldine's copyrights and other proprietary rights in the Database, or any prior or subsequent versions thereof, by their usage, copying, and incorporation into internet websites of the Database;
5. That the Court order the impoundment and destruction of all materials of Cross Defendants Kantemirov and Lightfoot containing the copy(ies) of the Database or its derivative works;
6. That Cross Defendants Kantemirov and Lightfoot be required to pay to Defendant and Counterclaimant Goldine such actual damages as he has sustained as a result of Cross Defendants' copyright infringement pursuant to 17 U.S.C. §504(b);
7. That Cross Defendants Kantemirov and Lightfoot be required to account for and disgorge to Defendant and Counterclaimant Goldine all gains, profits, and advantages derived by their copyright infringement pursuant to 17 U.S.C. §504(b);
8. That Cross Defendants Kantemirov and Lightfoot be required to pay Defendant and Counterclaimant statutory damages pursuant to pursuant to 17 U.S.C. §504(c);

9. That Cross Defendants Kantemirov and Lightfoot be required to pay Defendant and Counterclaimant an increase in the award of statutory damages due to Cross Defendants' willful infringement pursuant to 17 U.S.C. §504(c)(2);

10. That Cross Defendants Kantemirov and Lightfoot be ordered to pay to Defendant and Counterclaimant the costs of this action along with reasonable attorney fees;

11. That Counterclaimant be granted such further relief as the Court deems just.

Dated: July 15, 2005.

                              FORTUNE LAW GROUP LLP


                              By: \_\_\_/s/_____
                                   James Cai
                                   Attorneys for Defendant and
                                   Counterclaimant