SAMIRA ANSARI (BAR # 229568)
LAW OFFICE OF SAMIRA ANSARI
THE PRUNEYARD, TOWER I
1901 SOUTH BASCOM AVENUE, SUITE 1525
CAMPBELL, CALIFORNIA 95008
(408) 371-0062

Attorney for Plaintiff BORIS KANTEMIROV

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA CLARA**

| | |
|---|---|
| BORIS KANTEMIROV,<br><br>         Plaintiff,<br><br>   vs.<br><br>BARRY GOLDLINE, d/b/a BigWheels.net, AND DOES 1-25<br>         Defendants.<br><br>BARRY GOLDINE,<br>         Counterclaimant,<br><br>v.<br><br>BORIS KANTEMIROV, SKIP LIGHTFOOT, AND DOES 1-25 | Case No.: C0501362<br>AMENDED COMPLAINT FOR BREACH OF IMPLIED CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF CONTRACT FOR FAILURE TO PERFORM, FRAUD, CONVERSION, UNJUST ENRICHMENT, MISAPPROPRIATION OF IDEAS; COPYRIGHT INFRINGEMENT AND INFRINGEMENT OF RIGHT OF ATTRIBUTION . |

**IDENTIFICATION OF THE PARTIES**

1. BORIS KANTEMIROV (hereinafter "Plaintiff KANTEMIROV") is an individual residing in San Jose, California.

2. BARRY GOLDINE (hereinafter "Defendant GOLDINE") is an individual residing in San Jose, California.

3. BIGWHEELS.NET (hereinafter "Defendant BIGWHEELS") is a business owned and operated by Defendant GOLDINE, located 902 Commercial Street, San Jose, California, 95112 in the County of Santa Clara.

4. Defendant Does 1 through 25, inclusive (Hereinafter "Defendant DOES"), are individuals whose identities, capacities, and places of residence are presently unknown to Plaintiff and are therefore sued under fictitious names. Plaintiff believes and thereon alleges that each of the Defendants designated herein as Defendant DOES acted under the direction of Defendant and are, in some manner, responsible for the events and happenings referred to herein and caused the damage to Plaintiff as herein alleged. When Plaintiff ascertains the true names of Does 1 through 25, inclusive, he will ask leave of this Court to amend their Complaint by setting forth the same.

## **JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to the Copyright Act of 1976, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a).

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(c) and 1400(a), because the named parties are residents of this district and a substantial part of the events giving rise to these claims occurred in this District.

## STATEMENT OF FACTS

7. In February 2002, Plaintiff KANTEMIROV was employed at "Toy Store Autos," a dealership located on El Camino Real. Defendant GOLDINE came into the dealership offering to sell his wheels to Toy Store Autos.

8. Plaintiff KANTEMIROV spoke with Defendant GOLDINE and mentioned an opportunity for Defendant GOLDINE to sell his wheels on the internet. A meeting was arranged between Plaintiff KANTEMIROV and Defendant GOLDINE to discuss the details.

9. At that meeting, Plaintiff KANTEMIROV demonstrated that selling wheels on the internet could be quite profitable. Defendant GOLDINE thought the idea sounded interesting and the parties agreed that Plaintiff KANTEMIROV 's responsibility for this business venture and their partnership would be the internet sales and to assist in generation of traffic and to increase the customer base.

10. Also at this first meeting, Plaintiff KANTEMIROV and Defendant GOLDINE discussed financial participation in the venture. An agreement was reached that Plaintiff KANTEMIROV would be entitled to profits from orders generated by the website. The agreement was to split the gross profit evenly (gross profit defined as total sales less cost of goods, taxes and shipping.) NO LABOR or other EXPENSES were to be factored into the gross profit calculation. Defendant GOLDINE did not make any initial investments in the business venture and their partnership.

11. At the first meeting, Defendant GOLDINE proposed using the domain name BigWheels.net, which he had already registered.  As of February 2002, there was only one html page located at BigWheels.net and there were no sales or traffic generated by the website.  Plaintiff KANTEMIROV suggested that it might be better not to use a .net domain name, but Defendant GOLDINE convinced Plaintiff KANTEMIROV that Defendant GOLDINE had already setup a corresponding fictitious business name.

12. Defendant GOLDINE referred to himself and Plaintiff KANTEMIROV as **partners** in their association.

13. Subsequent to the February 2002 meeting, Plaintiff KANTEMIROV spent a considerable amount of time with Defendant GOLDINE trying to understand Defendant's business, including learning many technical aspects.  This was important because, in order to create a functional and operative website to sell Defendant's wheels, Plaintiff KANTEMIROV had to systemize often incompatible data and create corresponding algorithms.  Plaintiff KANTEMIROV often discussed different algorithms he had created with Defendant GOLDINE to inform Defendant about how the algorithms would affect the functionality of the website.

14. May 2002 marked the first release of the BigWheels.net, whereupon Plaintiff KANTEMIROV began trying to gain traffic for the website.  Plaintiff KANTEMIROV constantly worked on improving the website interfaces in order to generate sales.  Throughout the process of designing and marketing the website, Plaintiff KANTEMIROV was operating without a budget and using his own time and money.

15. The first sale through the website occurred on October 10, 2002. The amount of the sale was $1962.33. After that first sale, sales approximately doubled each month. All sales were billed through Plaintiff KANTEMIROV's independent company 1000Rims.

16. In December 2002, BigWheels.net was awarded the "Golden Web Award" for best site in the industry.

17. In 2003, Defendant GOLDINE told Plaintiff KANTEMIROV that it would be more convenient to have the credit card billing go through Defendant's warehouse. Defendant also noted that it would be better to have the site name, shipper and billing records match on customer statements.

18. At the same time Defendant GOLDINE requested that billing be transferred to his warehouse, Defendant also began trying to include EXPENSES in the profit sharing calculation. This directly violated the agreement as set forth in paragraph 7, above. In order to make the situation "fair," Defendant GOLDINE offered to reimburse half of Plaintiff KANTEMIROV's expenses for online advertising, hosting and hardware upgrades. Defendant GOLDINE's deductions were always bigger.

19. One of the first expenses deducted by Defendant GOLDINE was a salesman he hired to help him close sales by taking phone calls and processing orders. Phone calls and processing orders was always part of Defendant GOLDINE's 50% responsibility to the partnership.

20. Plaintiff KANTEMIROV was not happy with changing the partnership agreement relating to profits and Plaintiff only agreed to the changes in order for the business to stay successful.

21. By the end of 2003, BigWheels.net had reached nearly $100,000 per month in sales.

22. By April 2004, Defendant GOLDINE had begun to deduct more and more expenses, including **labor and other office expenses**. Again, these items were not to be part of the profit calculation as described in paragraph 7, above. Further, Defendant GOLDINE refused to reimburse any of Plaintiff KANTEMIROV's expenses, as he had agreed to in order to make up for the deduction of his own expenses. [*See* paragraph 15, above]

23. In the summer of 2004, BigWheels.net had become so popular that Plaintiff KANTEMIROV's equipment could no longer handle the real traffic growth. Plaintiff approached Defendant GOLDINE about allocating resources to purchase a T1. Defendant GOLDINE did not want to participate in the upgrade and, to remedy the problem, Plaintiff KANTEMIROV was forced to make the pages "lighter" by removing some graphics.

24. In September 2004, Defendant GOLDINE attempted to cut Plaintiff KANTEMIROV's earnings even further. Defendant GOLDINE also tried to force Plaintiff KANTEMIROV to sign a "business agreement proposal," which would give Defendant a right to claim bigwheels.net, the traffic it generated and its customer base as Defendant's property.

25. In October 2004, Plaintiff KANTEMIROV purchased a T1 at his own risk. Plaintiff also began paying for additional advertising to regain traffic that had reduced due to the traffic overload because of the slower response. Note that Defendant GOLDINE has not shared any of Plaintiff KANTEMIROV's expenses since March 2004.

26. From October 2004 through January 2005, Plaintiff KANTEMIROV repeatedly tried to arrange meetings with Defendant GOLDINE in order to fix problems. Defendant GOLDINE always claimed he was busy.  Also during this period, Plaintiff KANTEMIROV noticed suspicious activity occurring on the administrative pages of BigWheels.net.  When asked to explain the activity, Defendant GOLDINE responded that he was merely working with data.

27. On January 1, 2005, Plaintiff KANTEMIROV received a termination letter from Defendant GOLDINE. When Plaintiff KANTEMIROV tried to visit BigWheels.net, it was dead ("page not found").  Plaintiff KANTEMIROV attempted to contact Defendant GOLDINE but received no reply.

28. On January 2, 2005, Plaintiff KANTEMIROV discovered that BigWheels.net was back online, but slightly different.  The website was an exact functional copy of the website created  by Plaintiff KANTEMIROV, but with different colors.

29. On or about May 24, 005 Plaintiff executed a Copyright Application.  Plaintiff alleges that Defendants are infringing upon its copyright through their websites.

## COUNT ONE

## Breach of Implied Contract

30. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 29 above, as if fully stated herein.

31. Plaintiff KANTEMIROV has at all times performed the terms of the implied contract, including developing and maintaining BigWheels.net.

32. When Plaintiff KANTEMIROV and Defendant GOLDINE first met regarding setting up an internet presence for Defendant's business, an implied partnership and thus, an implied contract, was formed between them.

33. The implied partnership is evidenced by the profit sharing calculation agreed to both by Plaintiff KANTEMIROV and Defendant GOLDINE that allowed for profits to be split evenly after cost of goods, taxes and shipping were deducted. The original agreement was also based on the premise that no labor or any other expenses were to be deducted.

34. The performance due under this implied contract was to act in a manner that was beneficial and fair both to the business and to the partners involved.

35. Defendant GOLDINE failed, through various restructurings of the profit sharing agreement, to tender his performance as required by the implied contract. Defendant GOLDINE breached the implied contract by repeatedly **unilaterally** renegotiating the profit divisions. As discussed in the statement of facts [*See* paragraphs 15-18, above], Defendant began deducting **labor, expenses** and even **supplies** before calculating the profits to be split.

36. As a direct and legal result of Defendant GOLDINE's breach of implied contract, Plaintiff KANTEMIROV has been damaged in an amount according to proof at trial including, but not limited to, consequential damages, lost profits due to Defendant's restructuring of the profit sharing agreement, and all other general and special damages.

## COUNT TWO

### Breach of the Implied Covenant of Good Faith and Fair Dealing

37. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 36 above, as if fully stated herein.

38. Contained in every contract, express or implied, is an implied covenant of good faith and fair dealing by each party not to do anything that will deprive the other parties of the benefits of the contract.

39. Defendant GOLDINE and Plaintiff KANTEMIROV agreed to a system of profit sharing at the initial partnership meeting in February 2002.  However, over the course of the partnership, Defendant GOLDINE **unilaterally** changed the profit sharing system on a number of occasions [*See* paragraphs 15-18, above].  Each time the system was changed, items were included in the profit calculation that were not agreed upon in February 2002, including **labor, expenses** and **supplies**.  These changes resulted in lower and lower payments to Plaintiff KANTEMIROV for each sale, despite the fact that sales were at a high level.

40. Defendant GOLDINE's **unilateral** changes in the profit sharing calculation constituted a breach of the implied covenant of good faith and fair dealing.

41. As a direct and legal result of Defendant GOLDINE's breach of the implied covenant of good faith and fair dealing, Plaintiff KANTEMIROV has been damaged in an amount according to proof at trial including, but not limited to, consequential damages and all other general and special damages.

### COUNT THREE

### Breach of Implied Contract for Failure to Perform

42. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 41 above, as if fully stated herein.

43. The compensation structure agreed to by both Plaintiff KANTEMIROV and Defendant GOLDINE was central to the partnership agreement between them. Plaintiff KANTEMIROV would not have invested his own time, money and effort on developing BigWheels.net, had he not been able to receive a portion of the profits generated by it.

44. Defendant GOLDINE, by changing the profit sharing agreement several times [*See* paragraphs 15-18, above], rendered the agreement different in substance

than what was originally agreed upon.  By doing so and by deducting items that were not part of the original profit sharing agreement (such as **labor, expenses** and **supplies**), Defendant GOLDINE materially breached the implied contract between Defendant and Plaintiff KANTEMIROV.

45. As a direct and legal result of Defendant GOLDINE's breach of implied contract for failure to perform, Plaintiff KANTEMIROV has been damaged in an amount according to proof at trial including, but not limited to, consequential damages and all other general and special damages.

## COUNT FOUR

## Fraud (Intentional Misrepresentation)

46. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 45 above, as if fully stated herein.

47. Defendant GOLDINE made numerous misrepresentations of material fact throughout the course of the partnership, including promising to abide by a profit sharing agreement and continuing to affirm Plaintiff KANTEMIROV's importance to the partnership.  Furthermore, when Plaintiff KANTEMIROV approached Defendant GOLDINE about what he thought was suspicious activity on the administrative pages of BigWheels.net, Defendant replied that he was merely working with data.  As it turned out, Defendant was copying all of the data from the site so he could reopen the site after terminating Plaintiff on January 1, 2005.

48. Defendant GOLDINE made these misrepresentations in order to induce reliance on the part of Plaintiff KANTEMIROV.  Believing Defendant GOLDINE's misrepresentations, Plaintiff KANTEMIROV's reliance was justified.

49. As a direct and legal result of Defendant GOLDINE's fraud and misrepresentation, Plaintiff KANTEMIROV has been damaged in an amount according to proof at trial including, but not limited to, consequential damages, damages for negligent infliction of emotional distress, punitive damages and all other general and special damages.

## COUNT FIVE

### Conversion

50. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 49 above, as if fully stated herein.

51. Plaintiff KANTEMIROV authored the BigWheels.net website and invested his own time and money in marketing the site so as to raise traffic levels.  As a result of Plaintiff KANTEMIROV's efforts, sales continued to grow each month the website was active.  Plaintiff KANTEMIROV was also awarded the "Golden Web Award" for best website in the industry based on consumer feedback.

52. After Plaintiff KANTEMIROV received a termination letter from Defendant GOLDINE on January 1, 2005, Plaintiff discovered that BigWheels.net was no longer operating.  However, a day later, Plaintiff discovered that the website was again online and that the layout and design of the website was exactly the same as that created by Plaintiff, with the exception of a few color changes.  Defendant GOLDINE never sought, nor did he have, permission to make use of the website designed by Plaintiff KANTEMIROV after the partnership was terminated.

53. Because Defendant GOLDINE has been operating the website essentially created by Plaintiff KANTEMIROV at the same web address, Defendant has benefited from use of a website created by Plaintiff as well as all of the traffic and customer base generated by Plaintiff's efforts.  However, since terminating the partnership,

Defendant GOLDINE has not paid profits to Plaintiff KANTEMIROV based on post-partnership sales.

54. As a direct and legal result of the conversion by Defendant GOLDINE of Plaintiff KANTEMIROV's intellectual property embodied in the design of the BigWheels.net website, Plaintiff KANTEMIROV has been damaged in an amount according to proof at trial including, but not limited to, consequential damages, damages for negligent infliction of emotional distress, punitive damages and all other general and special damages.

55. Further, Defendant GOLDINE should be enjoined from the use of any layout or design created by Plaintiff KANTEMIROV in the operation of the BigWheels.net website.

## COUNT SIX

### Unjust Enrichment

56. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 55 above, as if fully stated herein.

57. As addressed above, Defendant GOLDINE has restarted the BigWheels.net website using the exact same layout and design as the website created by Plaintiff KANTEMIROV, with the exception of a few color changes.

58. Because Plaintiff KANTEMIROV was able to develop high traffic levels, high customer recognition (as evidenced by the "Golden Web Award"), and a strong customer base, Defendant GOLDINE benefits from utilizing a website with the exact same layout as that created by Plaintiff.  Defendant reaps all of the benefits from Plaintiff's time, money and effort, while Plaintiff no longer receives anything.

59. Defendant GOLDINE has been unjustly enriched at Plaintiff KANTEMIROV's expense in an amount according to proof at trial.  Plaintiff KANTEMIROV prays that the court will award him restitution as well as any other general and special damages it deems appropriate.

## COUNT SEVEN

### Misappropriation of Ideas

60. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 59 above, as if fully stated herein.

61. Plaintiff KANTEMIROV authored and designed the BigWheels.net website expressly for use in the partnership agreement between Plaintiff and Defendant GOLDINE.  The website was Plaintiff's contribution to the partnership and represents his intellectual property.

62. After Defendant GOLDINE terminated the partnership with Plaintiff KANTEMIROV, Plaintiff discovered that Defendant was operating the BigWheels.net website using layout and design exactly the same as that created by Plaintiff, with the exception of a few color changes.

63. Defendant GOLDINE did not seek, nor did he have, permission to use the website authored by Plaintiff KANTEMIROV.

64. As a direct and legal result of the misappropriation of ideas committed by Defendant GOLDINE, Plaintiff KANTEMIROV has been damaged in an amount according to proof at trial including, but not limited to, consequential damages, damages for negligent infliction of emotional distress, and all other general and special damages.

//

//

## COUNT EIGHT

### Copyright Infringement

65. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 64 above, as if fully stated herein.

66. This action arises under the Copyright Act of 1976, *17 U.S.C. § 101* et seq. Jurisdiction is vested in this Court pursuant to *28 U.S.C. § 1338*.

67. Plaintiff is the author of a work of visual art, which he created. The work is designing, creating and compiling websites, its contents and graphics.

68. Pursuant to the separation of their business relationship, Defendant willfully and intentionally distorted, mutilated, and otherwise modified the work, in violation of Plaintiff's right of integrity therein, as set forth in Title 17, Section 106A(a)(3)(A), of the United States Code. Defendant did so by copying and recreating the websites designed and created by Plaintiff and by using the same contents included therein.

69. Defendant's willful and intentional distortion, mutilation, and other modification of Plaintiff's work is the proximate cause of prejudice to Plaintiff's honor or reputation, to plaintiff's damage in the amount to be determined at trial.

70. Any such willful and intentional distortion, mutilation, or other modification to the work will cause prejudice to Plaintiff's honor or reputation, to Plaintiff's damage in the amount to be determined at trial.

71. Unless restrained and enjoined by this court, any such continued willful and intentional distortion, mutilation, or other modification of the work will cause irreparable injury to Plaintiff's honor or reputation, in that pecuniary compensation will not afford plaintiff adequate relief for the damage thereto.

72. Plaintiff has not waived any of his integrity rights under Title 17 of the United States Code, Section 106A(a).

## COUNT NINE

### Infringement of Right of Attribution

73. Plaintiff KANTEMIROV re-alleges and incorporates all the allegations of this Complaint contained in paragraphs 1 through 72 above, as if fully stated herein.

74. Despite Defendant's willful and intentional distortion, mutilation, or other modification of Plaintiff's work as alleged above, the distorted, mutilated, and otherwise modified work continues to bear Plaintiff's signature.

75. Unless restrained and enjoined by this Court, Defendant will continue to permit the work, as distorted, mutilated, and otherwise modified to the prejudice of Plaintiff's honor or reputation, to bear Plaintiff's name. Any such continued attribution of Plaintiff's name to the work as distorted, mutilated, and otherwise modified by defendant, will cause irreparable injury to Plaintiff and to his/her honor or reputation, in that pecuniary compensation will not afford Plaintiff adequate relief for the damage thereto.

76. Plaintiff has not waived any of his/her attribution rights under Title 17, Section 106A(a), of the United States Code.

## RELIEF

WHEREFORE, Plaintiff KANTEMIROV prays that the court, upon trial and determination of his causes of action, award the following relief:

1. Compensatory damages for all expenses incurred by Plaintiff KANTEMIROV because of the acts of Defendant GOLDINE;

2. All incidental and consequential damages suffered according to proof at trial;

3. Other general and special damages as determined at trial;

4. For attorney fees to the extent permitted by statutes or case law;

5. For costs of the suit incurred; and

6. Such other and further relief as the court may deem just and proper.

7. Plaintiff also seeks award of Punitive Damages.

### ON COUNT ONE

Plaintiff KANTEMIROV asks the court to award the lost profits to which he was entitled under the original profit sharing agreement and which he would have received had Defendant GOLDINE not unilaterally restructured the profit sharing agreement over the course of the partnership.

### ON COUNT FOUR

Plaintiff KANTEMIROV asks the court to award punitive damages under Cal. Civ. Code § 3294(a) if Plaintiff is able to demonstrate the cause of action through clear and convincing evidence.

### ON COUNT FOUR, FIVE, AND SEVEN

Plaintiff KANTEMIROV asks the court to award non-compensatory damages for the negligent infliction of emotional distress suffered by Plaintiff KANTEMIROV as a result of the occurrences described in this Complaint.

### ON COUNT SIX

Plaintiff KANTEMIROV asks the court to enjoin Defendant GOLDINE from using the present layout and design of the BigWheels.net website.

Plaintiff KANTEMIROV is entitled to restitution for the amount by which the court determines Defendant GOLDINE was unjustly enriched as well as any other general and special damages as the court may deem appropriate.

//

## ON COUNT EIGHTH AND COUNT NINE

1. That Defendant be restrained and enjoined during the pendency of this action, and permanently thereafter, from infringing Plaintiff's right of integrity in the work by distorting, mutilating, or otherwise modifying the work to the prejudice of Plaintiff's honor or reputation.

2. That Defendant be restrained and enjoined during the pendency of this action, and permanently thereafter, from infringing Plaintiff's right of attribution in the work by permitting Plaintiff's name to remain on work that Defendant has distorted, mutilated, and otherwise modified to the prejudice of Plaintiff's honor or reputation.

3. That Defendant be required to pay to Plaintiff such damages as Plaintiff has sustained in consequence of Defendant's infringement of Plaintiff's integrity and attribution rights in Plaintiff's work.

4. That Defendant be required to account to Plaintiff for all gains, profits, and advantages derived by Defendant by his infringement of Plaintiff's integrity and attribution rights in Plaintiff's work.

5. That Defendant, as a willful infringer, be required to pay to Plaintiff such statutory damages as the court shall deem within the provisions of the copyright statutes, but not less than $ 500.00 for each infringement of each of Plaintiff's integrity and attribution rights in Plaintiff's work.

6. That Defendant be required to deliver up to be impounded during the pendency of this action all prints of Plaintiff's work in Defendant's possession or under Defendant's control.

7. That Defendant be required to pay to Plaintiff the costs of this action and reasonable attorney's fees to be allowed to plaintiff by the court; and

8. That Plaintiff be granted such other and further relief as the Court deems necessary, proper, and just.

9. That Plaintiff be awarded punitive damages.

RESPECTFULLY SUBMITTED

/S/

DATED: July 11, 2005

Samira Ansari, Esq.
Attorney for Plaintiff